UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LAZAROS TSITSOULIS,[1]                    Civil Action Number: 2:07-4544

     Plaintiff,

v.

TOWNSHIP OF DENVILLE, *et al.*,                    OPINION

     Defendants.                    HON. WILLIAM J. MARTINI

MEMORANDUM OPINION[2]

I.    INTRODUCTION

Plaintiff brought a five count Complaint, (Doc. No. 1), against the Township of

Denville, the Denville Police Department, the Denville Township Board of Education (the

"Board"), Patrolman Richard Byrne, Principal George Deamer, Superintendent John Sakala,

and Andrew Wubbenhorst, Esq, the attorney for the Board. The Complaint alleges five

---

[1] The Court notes that Plaintiff's Opposition Brief is captioned "Tsitsuolis," but his name is spelled "Tsitsoulas" within the brief. The Court follows the spelling on the caption.

[2] For the convenience of the reader of this document in electronic format, hyperlinks to the Court's record and to authority cited herein may be inserted. No endorsement of any provider of electronic or other resources is intended by the Court's practice of using hyperlinks.

counts, against all defendants,[3] including: Count 1 – wrongful arrest in violation of the First and Fourth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983; Court 2 – wrongful arrest in violation of the New Jersey Constitution; Count 3 – malicious prosecution; Count 4 – malicious use of process; and Count 5 – wrongful arrest. Count 1 is the only federal claim; the remaining claims are state causes of action brought pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367.

Presently before the Court is Defendant Andrew Wubbenhorst, Esq.'s Motion for Summary Judgment (the "Motion"), (Doc. No. 25). The Motion is fully briefed. *See* Opening Brief, (Doc. No. 25-30); Opposition Brief, (Doc. No.30-2); Reply Brief, (Doc. No. 36).

Having considered the parties' filings, federal and state constitutional and statutory law, case law, and persuasive scholarly authority, the Court, for the reasons elaborated below, will **GRANT** the motion.

## II.    FACTUAL BACKGROUND ALLEGED IN THE COMPLAINT[4]

Generally, Plaintiff was divorced and was subject to a family court order (the "FMC") determining where he may pick up his child. Plaintiff made several attempts to pick up his child after school on the premises of the Valley View School. Various school officials claim

---

[3] However, at this time, Wubbenhorst is the only remaining defendant in this action.

[4] As the facts of this case are well known to the parties and the subject of a prior letter opinion in this action, (Doc. No. 18), the Court gives only an abbreviated description of the facts.

2

that they understood the FMC to preclude Plaintiff's picking up his child on school premises. Plaintiff alleges that these school officials and Wubbenhorst[5] knew that the outstanding FMC did not bar Plaintiff from picking up his child at school. Plaintiff's position is that Wubbenhorst caused him to be arrested by Patrolman Byrne when he attempted to pick up his child at the school. Plaintiff was incarcerated for three days. This action seeks damages tied to the arrest and incarceration.[6]

More specifically, on July 20, 2005, Judge Manahan issued the FMC. It stated that the "the pick-up and drop-off of the children shall be at the residence of the [ex-wife]." Tsitsoulis Cert. ¶ 84. The Board was not a party to the family court action and had no reason to be aware, unlike the parties to the family court action, that the FMC "only applied to the summer months," thereby leaving intact prior orders permitting Plaintiff to pick up his child at school. *Id.* ¶ 85. On September 7, 2005, Plaintiff attempted to pick up his child at school. His child was put on a bus. And Principal Deamer told Plaintiff that he was not "want[ed] on school grounds." *Id.* ¶ 87. On September 14, 2005, Plaintiff again came to pick up his child. Deamer called the police, who turned the child over to Plaintiff "when [the officer]

---

[5] This opinion does not address whether Wubbenhorst was a school board official or a state actor. *See* Tsitsoulis Cert. ¶ 2 (stating that Wubbenhorst's is the Board's attorney).

[6] The Court notes that the Complaint does *not* seek damages for pre-arrest restrictions to Plaintiff's liberty. *See, e.g.*, Compl. ¶ 76 (asserting his First Amendment right of free assembly, under Section 1983, in relation to his "arrest[] and remov[al] from the Valley View School"); *id.* ¶ 77 (asserting his Fourth Amendment right, under Section 1983, in relation to his "arrest without probable cause"). Likewise, the state causes of action, i.e., Counts 2, 3, 4, and 5 are tied to the arrest and to alleged post-arrest injuries.

3

saw [that the child] was willing" to go with the Plaintiff. *Id*. ¶ 90.

On September 15, 2009, Wubbenhorst sent Superintendent Sakala[7] an e-mail stating: "If [Plaintiff] returns [to the school] in the meantime [that is, before the family court judge clarifies the FMC], Advise [sic] the police that we wish to file a complaint against him for trespassing for coming onto the property without permission *and* taking his child in contravention to a court order. If the police won't sign it, you should on behalf of the district. They must assist you in completing the form. The Judge then has the opportunity to set bail and make a condition of bail that Mr. Tsitsoulas not return to the school." (emphasis added). It is not clear if these were intended as two separate instructions: (1) Plaintiff is not allowed on the school's property and (2) Plaintiff is not allowed to pick up his children on school property, or, alternatively, a single instruction precluding Plaintiff from coming onto school grounds to pick up his child, but not otherwise precluding his coming on school grounds for other purposes. Plaintiff also asserts that this e-mail is evidence that Wubbenhorst actually knew that the FMC did not bar Plaintiff from picking up his child at school. *Id*. ¶¶ 106-08. Plaintiff's position is entirely conclusory. A more restrained interpretation of the e-mail is that Wubbenhorst believed the FMC barred Plaintiff from picking up his child at school and advised the Board that they should act on that understanding or that they may act on that understanding, even prior to Judge Manahan's having had an opportunity to clarify his prior

---

[7] This e-mail, in part or in its entirety, was forwarded on to other school officials, including Principal Deamer and Vice Principal Novack.

orders, or, alternatively, that Wubbenhorst did not know clearly if Plaintiff was barred by the FMC from picking up his child at school, and was willing to have Plaintiff barred from the school until such time as Judge Manahan clarified his prior orders. As explained below, although the parties brief this point extensively, this Court's opinion does not depend on who is correct in regard to this disputed fact. It is simply not material under the governing legal standard. Finally, Wubbenhorst has stated in his deposition that he was not instructing his client, the Board, to have Plaintiff arrested, but was instead advising the Board as to options it could pursue. *Cf.* Reply Brief 5 (noting that under New Jersey rules process can issue by a summons or an arrest warrant, and that the disputed e-mail offered advice as to the process by which a complaint may be issued).

On September 16, 2005, Plaintiff again appeared at the school, he sought to pick up his child, and was refused by Deamer who had called the police. It is disputed whether or not Plaintiff was being disruptive at this time. *Compare* Tsitsoulis Cert. ¶ 134, *with* Opening Brief 7-8 (collecting citations to depositions). The police (apparently Patrolman Lucas as reported by Patrolman Weldon) told Plaintiff that "if [he] attempted to do so again [he] would be arrested." Tsitsoulis Cert. ¶ 95. Indeed, Tsitsoulis was on specific notice that he risked a trespass charge. *See* Tsitsoulis Dep. 293:23-25, Jan. 13, 2009.

Plaintiff returned to the school on September 21, 2005. Patrolman Byrne, acting on information from Weldon, warned Plaintiff that he should leave the grounds. Byrne reminded Plaintiff that he was put on notice on September 16 that returning to the school to pick up his

child risked arrest. He was offered an opportunity to comply by leaving the premises. Plaintiff failed to comply. Byrne arrested Plaintiff for defiant trespass and resisting arrest. He was removed from the school premises and incarcerated.[8] Plaintiff asserts that Patrolman Byrne [was] aware that there was no basis for arresting [the Plaintiff] for trespassing. In his report of the arrest, Patrolman Byrne makes reference to the e-mail [from Wubbenhorst to the Board] and discusses its content." Tsitsoulis Cert. ¶ 110. Byrne's report does *not* support Plaintiff's factual claim. The report states that "[Police Officer] Weldon was advised of an email sent to the Principal of Valley View School from the School Superintendent, according to the email, Principal Deamer was advised from the attorney that Tsitsoulis is not allowed to be on school property." (Doc. No. 25-15 at 4.) The fact that Byrne stated that Weldon "was advised" of an e-mail does not mean that Weldon saw the e-mail, much less that Byrne saw it, or, that if Byrne saw it, he understood it to mean that there was no legal basis to exclude Tsitsoulis from the school premises. Plaintiff points to no deposition or other evidence supporting his implausible interpretation of the police report. *Id.*

Sometime during that day, the day of the arrest, Judge Manahan signed an order to show cause clarifying the position of the parties to the FMC and confirming Plaintiff's understanding. Tsitsoulis Cert. ¶ 101. Plaintiff's position is that his wrongful arrest

---

[8] The state court charges were eventually dismissed, notwithstanding the fact that the state court judge expressly found that the police had probable cause to effectuate the arrest. This Court, however, has no occasion to discuss issue preclusion in regard to probable cause. Issue preclusion is an affirmative defense, but it was not argued in the instant motion.

(wrongful, in his view, because the family court order did not preclude his picking his child up at school) was caused by Wubbenhorst's advice.

Thereafter, Plaintiff filed this action.

III.    STANDARD OF REVIEW

Summary judgment is appropriate if the "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also* *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also* *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those

portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## IV.   ANALYSIS

Plaintiff puts forward several contentions in opposition to summary judgment. This opinion addresses each contention in turn.

### A.   Did Patrolman Byrne Act With Probable Cause?

Plaintiff was arrested for defiant trespass, N.J.S.A. 2C:18-3(b)(1).[9] Defiant trespass is defined as "A person commits a petty disorderly persons offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by ... Actual communication to the actor ....").[10] Plaintiff argues that his "Fourth Amendment right against unreasonable seizures was violated when he was arrested and removed from the Valley View School." Compl. ¶ 13. He seeks to vindicate that right under 42 U.S.C. § 1983.

An arrest or seizure based upon probable cause, even absent a warrant, does not violate the Fourth Amendment. *See United States v. Burton*, 288 F.3d 91, 98 (3d Cir. 2002).[11] In determining whether a police officer acted with probable cause, one looks to federal standards, not to whether or not the officer complied with state law.[12] "A significant body of

---

[9] Plaintiff was also arrested for resisting arrest. *See* N.J.S.A. 2C:29-2(a)(1).

[10] *But see* N.J.S.A. 2C:18-3(d)(2) ("Defenses. It is an affirmative defense to prosecution under this section that: (2) The structure was at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the structure ....").

[11] The probable cause standard for arrest or seizure is not the same as that needed to convict. *See Locke v. United States*, 11 U.S. (7 Cranch) 339, 348 (1813) (Marshall, C.J.) (recognizing that probable cause "means less than evidence which would justify condemnation").

[12] "It is well understood, however, that '[m]ere violation of a state statute does not infringe the federal Constitution,' and that '[s]tate rather than federal courts are the appropriate institutions to enforce state rules.'" *United States v. Laville*, 480 F.3d 187, 192 (3d Cir. 2007) (quoting *Archie v. City of Racine*, 847 F.2d 1211, 1216, 1217 (7th Cir. 1988) (en banc)).

caselaw makes clear why any such requirements simply cannot be, and why a Fourth Amendment determination cannot turn on the exigencies of the law of a particular state or territory or an officer's knowledge of the elements of a particular offense and whether each element has been satisfied." *United States v. Laville*, 480 F.3d 187, 193 (3d Cir. 2007).

"[R]easonableness ... is the central inquiry under the Fourth Amendment. Sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment. Probable cause exists whenever reasonably trustworthy information or circumstances within an arresting officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed by the person being arrested." *Id*. at 194 (quotation marks, brackets, and citations omitted). This would include a misdemeanor committed in the officer's presence. *Cf. United States v. Watson*, 423 U.S. 411, 422 & n.11 (1976) (collecting persuasive authority in regard to probable cause determinations for misdemeanors). "[C]ourts should make reasonable-suspicion determinations [by] look[ing] at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotation marks omitted). Objective reasonableness is a question of the law for the court, although if there are relevant factual disputes, they may be resolved by a jury. *See Curley v. Klem*, 499 F.3d 199, 210-11 (3d Cir. 2007); *see also Tarus v. Borough of Pine Hill*, Civil Action No. 1:01-4468, at *10 (D.N.J. June 23, 2003) (Rodriguez, J.) (appearing at docket number 25), *aff'd*, 105 Fed. Appx. 357 (3d Cir. July 15,

2004) (Sloviter, J.) (affirming where district court determined at the summary judgment stage that the arrest was supported by probable cause).[13]

In this action, certain facts are not disputed. Plaintiff acknowledges that Principal Deamer told the police prior to the encounter on September 16, 2005 that Plaintiff should not return to the school.[14] The police (apparently Patrolman Lucas) communicated that instruction to Plaintiff on September 16, 2005. Opposition Brief 4. And Weldon communicated this information to Byrne. *Id*.

On September 21, 2005, Byrne reminded Plaintiff that he was put on notice on September 16 that returning to the school risked arrest. He was told it again. Byrne Dep. 16:9-17, Feb. 27, 2009. He was offered an opportunity to comply by leaving the premises. Plaintiff failed to comply. *Id*. at 41:2-7; Tsitsoulis Dep. 119:22-25, Jan. 8, 2009 ("Q: Is it your testimony that the police office may have told you, at that point in time, that you were

---

[13] After the federal causes of action were dismissed, the *Tarus* plaintiff filed his state causes of action (which were not dismissed by the federal court) in state court. *See Tarus v. Borough of Pine Hill*, 916 A.2d 1036 (N.J. 2007) (Zazzali, J.) (terminating plaintiff's false arrest, false imprisonment, and malicious prosecution claims based on the absence of probable cause, but remanding plaintiff's claim grounded in the "common law right to videotape municipal proceedings"), *rev'g in part on other grounds*, 886 A.2d 1056 (N.J. Super. Ct. App. Div. 2005).

[14] It is unclear whether Deamer told the police that Plaintiff could not return to the school premises at all, or only that he could not return to pick up his child. Opposition Brief 4. Nothing in this opinion turns on this distinction because when Plaintiff returned on September 21, 2005, he returned with the purpose to pick up his child. In short Byrne, the arresting officer, acted consistently with the more limited interpretation of Deamer's instructions (Plaintiff could return to the premises for a purpose other than picking up his child), even if Byrne believed that Plaintiff could not return to the school premises for any purpose at all.

trespassing on school grounds? A: He told me at some point ....").Thereafter, Byrne arrested

Plaintiff for defiant trespass and he was removed from the school premises and incarcerated.

It is not disputed that Plaintiff's privilege to stay on school premises had been withdrawn by

Deamer, the school principal. It is not disputed that this information was communicated to

Plaintiff. It is not disputed that he was given an opportunity to leave, but refused to do so. He

defied the police order to leave. Given that defiant trespass is defined as "A person commits

a petty disorderly persons offense if, knowing that he is not licensed or privileged to do so,

he enters or remains in any place as to which notice against trespass is given by ... Actual

communication to the actor," N.J.S.A. 2C:18-3(b)(1), the objective facts known to the

arresting officer amount to probable cause.

 Plaintiff's arguments to the contrary are not convincing.

 Plaintiff argues that he did not "know[] that he [was] not licensed or privileged,"

N.J.S.A. 2C:18-3(b)(1), to remain on the school premises, notwithstanding that he had been

ordered to go by the police. Opposition Brief 1-2. His subjective belief, based upon his belief

that Wubbenhorst and Deamer misunderstood or disregarded the meaning of the FMC, would

be a defense on the underlying charge, but it does not refute, the police officer's probable

cause determination. See Liberty & Prosperity 1776, Inc. v. Corzine, Civil Action No. 08-

2642, 2009 WL 537049, at *11 n.19 (D.N.J. Mar. 3, 2009) (Simandle, J.) (dismissing Fourth

Amendment claim, and holding that "[Plaintiff's] belief that he 'had no choice ... but to

disregard the unlawful instructions of the police officers' ... did not entitle him to disobey

their orders"). The police, in making a probable cause determination, on the spot, could reasonably conclude, having themselves warned Plaintiff that he must leave the school premises, that Plaintiff *knew* he had no privilege to remain. *See Paff v. Kaltenbach*, 204 F.3d 425, 437 (3d Cir. 2000) ("[Police Officer] Kaltenbach was required to make a judgment call regarding plaintiffs' state of mind. [The persons arrested] told Kaltenbach that they *believed* they were entitled to be leafleting on the sidewalk and offered a plausible explanation for that belief. Nevertheless, we find nothing in the probable cause jurisprudence that makes it apparent that Kaltenbach was required to accept that assertion at face value." (emphasis added)). Likewise, Plaintiff admits that Deamer "advised me that I was trespassing and could not pick up [my child]." Opposition Brief, ex. DA , at 5, (Doc. No. 30-7); *see also* Tsitsoulis Cert. ¶¶ 87-88 (same). Indeed, it was Deamer who repeatedly brought the police to the scene. *See, e.g.*, *id*. ¶¶ 87 (Deamer calling the police on September 7, 2005), 88 (Deamer calling the police on September 16, 2005). In other words, the custodian of the school property,[15] the principal, advised Plaintiff that he was trespassing. Here the police, had "information supporting a conclusion that the potential defendant in a trespass case was not licensed or privileged [to be on the property] and that he was so advised by the custodian of the property," as the Third Circuit has explained, such information "ordinarily ... will provide sufficient circumstantial evidence to constitute probable cause on the *mens rea* element.

_____

[15] *See, e.g.*, *New Jersey v. Conk*, 434 A.2d 602, 604 (N.J. Super. Ct. App. Div. 1981) (holding that notwithstanding that a school is public property, a principal or vice-principal can restrict access).

Moreover, this [conclusion] will normally be true even where the potential defendant, upon being confronted by a law enforcement officer, makes a claim of entitlement to be on the premises." *Paff*, 204 F.3d at 437.[16]

Plaintiff has also argued that he had a valid defense under N.J.S.A. 2C:18-3(d)(2), which provides that "[i]t is an affirmative defense to prosecution under this section that ... [t]he structure was at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the structure ...." Opposition Brief 2. "Here, [Plaintiff] must not only show facts which support the defense, but also that a reasonable police officer would know of these facts and conclude that a defiant trespass had not been committed." *Radiche v. Goode*, 886 F.2d 1391, 1396 (3d Cir. 1989) (applying 18 Pa. Cons. Stat. § 3503(c)(2) ("It is a defense to prosecution under this section that ... the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises ....")). Plaintiff has made no such showing as to the arresting officer's knowledge. Moreover, even assuming the defense would have applied to Plaintiff, such an affirmative defense does not, without (much) more, undermine Byrne's probable cause determination.

The gravamen of Plaintiff's Fourth Amendment claim is that Plaintiff had a right to be on the school premises and that Byrne's decision to confront Plaintiff and to direct him

---

[16] A police officer's decision to rely on "facts provided by a custodian of public property" must itself be reasonable. Here, Byrne had "no reason to question the good faith of the custodian," *Paff*, 204 F.3d at 434, or, at least, Plaintiff puts no such reason forward.

to leave the school premises was based on a mistake or worse. Opening Brief 1-2. In other words, Deamer and Wubbenhorst either: (1) misunderstood the FMC, or (2) knew full well that the FMC did not preclude Plaintiff from picking up his child at school, but merely told the police that it did in order to further their longstanding personal animus against Plaintiff. What Deamer and Wubbenhorst believed or knew does not enter into the calculus of whether or not Byrne effected the arrest with probable cause. Rather, in order to determine if an arrest comported with probable cause one looks to whether the "*detaining officer* ha[d] a particularized and objective basis for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273 (emphasis added). The fact that Deamer and Wubbenhorst were wrong or may have been motivated by personal animus does not change the fact that Deamer was the school's principal, i.e., the public property's custodian. *See Conk*, 434 A.2d at 604. He called the police to the premises. The police had directed Plaintiff to leave the premises on a prior occasion, and the police warned Plaintiff to leave on this occasion too, or else he would face arrest. As a matter of federal law, those facts establish probable cause:

> [A legal right to be on premises grounded in the] the First Amendment [or another federal right] is not an absolute shield against a disorderly conduct charge," because "although speech may be protected, [a party's] choice to disobey police orders is not." *Startzell v. City of Philadelphia*, 533 F.3d 183, 204 (3d Cir. 2008); *see also Diener v. Reed*, 77 Fed. Appx. 601, 610 (3d Cir. 2003) ("While speech may be protected, an individual's choice to disobey police orders is not"); *Redd v. City of Enterprise*, 140 F.3d 1378, 1382-83 (11th Cir. 1998). New Jersey law has long recognized that an individual's refusal to comply with a law enforcement officer's instructions "constitute[s] a violation of the disorderly persons statute." .... [Plaintiff] "refused" to

> comply with police officers' orders to "move ... a refusal which gave the
> officers probable cause to conclude that [Plaintiff] had committed the offense
> of disorderly conduct.

*Liberty & Prosperity 1776*, Civil Action No. 08-2642, 2009 WL 537049, at *10.[17] To put it

another way, in regard to defiant trespass, New Jersey law generally requires persons to obey

police orders, and failure to do so will constitute probable cause under the defiant trespass

statute. For example, in *State v. Brennan*, 780 A.2d 585, 592 (N.J. Super. Ct. App. Div.

2001), the mayor summoned the police to a town meeting to remove an allegedly disruptive

participant, i.e., Brennan. The police directed Brennan to leave or else face arrest. He refused

and was arrested. On appeal of his conviction, the Appellate Division explained:

> Defendant's contentions, as set forth in his brief and as presented to us at oral
> argument, focus in large part on whether he had, in fact, been disruptive and
> whether the mayor and council acted properly in their conduct toward him,
> including the request to the police that defendant be removed from the
> meeting. In our view, the charge of defiant trespass turns not so much on the
> correctness of the council's evaluation and reaction to defendant's conduct, but
> rather, on the reasonableness of the police actions and defendant's response
> thereto. Simply stated, if the police are performing a law enforcement function

---

[17] However, "[d]ismissal of [Plaintiff's] claims grounded in the Fourth Amendment
and the analogous provisions of the New Jersey Constitution does not mean that no remedy
exists for being [wrongfully] seized and removed from the [the premises, assuming that the
arrest was wrongful]. If [Plaintiff] pleads and proves that a defendant procured his arrest to
quell his exercise of his First Amendment rights [or any other federal right], damages may
be sought under the rubric of the First Amendment [and under Section 1983]." *Liberty &
Prosperity 1776*, Civil Action No. 08-2642, 2009 WL 537049, at *11; *see also* *State v.
Brennan*, 780 A.2d 585, 592 (N.J. Super. Ct. App. Div. 2001) ("Similarly, if defendant's
First Amendment rights were impinged by his removal from the meeting, that deprivation
could be addressed at a later time. The remedy that was not available to defendant was the
defiance of a police officer's direction given in the lawful course of the officer's
employment.").

in an appropriate manner, i.e., *not with an excessive use of force*, then a citizen is obligated to comply with the directions of the police. Failure to do so can result in a number of offenses, including obstruction, N.J.S.A. 2C:29-1; hindering, N.J.S.A. 2C:29-3b; resisting arrest, N.J.S.A. 2C:29-2 and, in this instance, defiant trespass. If the police action is without proper legal authority there are a variety of remedies and defenses that can be invoked by the wronged party at a later time.

*Id*. at 590 (emphasis added). Indeed, the police are not "obligated to conduct a full-fledged investigation of the allegations presented to them by the [public officials summoning the police] prior to asking [the party] to leave the premises.... The offense [of defiant trespass] [does] not turn on whether defendant had actually been disruptive. [It is enough that the public officials] conveyed a scenario to the police that [if true] justified the action [the police] took [i.e., the arrest]." *Id*. at 592.[18] *Brennan* seems to be squarely on-point. Byrne had probable cause based on the warnings officers at the scene of the arrest had given Plaintiff and Plaintiff's failure to comply. Plaintiff analogizes his position to a person whose arrest occurred because a warrant was issued against the wrong person in connection with a clerical error, and, therefore issued absent probable cause. His position is that Wubbenhorst or Deamer misunderstood or actively misrepresented the FMC to the police. *See* Opening Brief 5-6 (citing *Berg v. County of Allegheny*, 219 F.3d 261 (3d Cir. 2000)). The Court rejects Plaintiff's reasoning. In *Berg*, the only information the arresting officer had to support the

----

[18] To be clear, the probable cause standard, for Section 1983 purposes, is determined by *federal* law. Where, as here, the Plaintiff was arrested for violating *state* law, the court must look to *state* law to determine the elements of the offense charged in order to apply the *federal* probable cause standard to the facts of the situation confronting the police.

arrest was that which was in the warrant and the warrant misstated the identity of the person to be arrested. Here, by contrast, the officer's decision to arrest Plaintiff was based on facts known to the arresting officer. Probable cause was supported by the school principal's terminating Plaintiff's licence to remain on the school premises, by the police officer's knowledge of that termination, by the fact that Plaintiff was warned that his remaining on the premises risked arrest, and, most importantly, by Plaintiff's refusal to comply.[19] Unlike the officers in *Berg*, the arresting officer in this case did not act based on any mistake.

### B.    Is Wubbenhorst Liable Under The Fourth Amendment?

If judging all the facts in a light most favorable to Plaintiff, Byrne may have committed a constitutional tort under the Fourth Amendment, then this Court would have reason to consider theories of joint liability, e.g., conspiracy, and this Court would then

---

[19] In expounding on New Jersey law, the New Jersey courts have generally demanded compliance with a police officer's orders. The New Jersey courts have explained that a citizen must comply with a police officer's order if the officer does not use "excessive" force and if the officer acts with "proper legal authority." *State v. Brennan*, 780 A.2d at 590. Here "excessive force" is not pled. "Proper legal authority" appears to be coextensive with probable cause under New Jersey law. *See Green v. City of Paterson*, 971 F. Supp. 891, 909 (D.N.J. 1997) (collecting state authority). Finally, New Jersey case law permits a person to disobey "a police order to 'move on' ... where the circumstances show conclusively that the order was purely arbitrary and was not calculated in any way to promote public order." *State v. Taylor*, 118 A.2d 36, 49 (N.J. Super. Ct. App. Div. 1955). "Calculated in *any* way to promote public order" would seem to refer to the arresting officer's good faith, and Plaintiff has made no showing that Byrne intended to violate Plaintiff's rights or otherwise acted recklessly. Plaintiff's allegation do not go to Byrne's good faith; rather, Plaintiff argues that Wubbenhorst and Deamer misunderstood or misrepresented the facts to the police. Absent a clear red flag putting Byrne on notice that he should have been suspicious of the representations made to the police, such (alleged) misrepresentations do not put Byrne's good faith in doubt.

proceed to decide if Wubbenhorst might also be liable, even if Byrne had the benefit of qualified immunity or some other defense. However, this Court has held that there was no constitutional tort under the Fourth Amendment because the arrest was supported by probable cause. Thus there is no occasion to consider any theory of joint liability with regard to Plaintiff's Fourth Amendment claim.

This precise question was decided in *Tarus v. Borough of Pine Hill*, Civil Action No. 1:01-4468 (D.N.J. June 23, 2003), *aff'd*, 105 Fed. Appx. 357 (3d Cir. July 15, 2004). In *Tarus*, plaintiff sought to videotape a public meeting. The mayor summoned the police to the meeting, and the police directed him to turn off the videotape. The plaintiff refused to turn the videotape off and the mayor asked the police to remove him. He was then charged with violating a borough ordinance, i.e., behaving in a disorderly manner in a public place. After a municipal judge found plaintiff not guilty, plaintiff brought a Fourth Amendment claim against the police officer and the mayor. This Court held, citing *State v. Brennan*, that the arrest was supported by probable cause because "Plaintiff[] insist[ed] on disobeying the instructions of a police officer." *Id*. at *15. Having found no Fourth Amendment claim could lie against the arresting officer, this Court also rejected finding any liability against the mayor. *Id*. at *19 ("[B]ecause the Court has determined that probable cause for the arrest existed, summary judgment must be granted [in regard to all defendants on the Fourth Amendment claim]."). On appeal, the Third Circuit reached the same conclusion. *See* 105 Fed. Appx. at 360 ("Because we agree with the District Court that [Police] Chief Welker had

probable cause to arrest Tarus, Tarus' claims for false arrest and malicious prosecution fail. Moreover, because Chief Welker did not engage in any wrongdoing in arresting Tarus, we need not reach the related issues of whether Chief Welker and Mayor Gallagher are entitled to qualified immunity as to Tarus' constitutional claims or *whether Mayor Gallagher should be held jointly liable for Chief Welker's actions*." (emphasis added)).

### C.    The Freedom of Assembly Claim

Defendant argues that: "Mr. Tsitsoulis fails to articulate how his First Amendment rights were violated. There is no evidence Mr. Tsitsoulis was exercising his right to free assembly when he was attempting to pick-up his son after [having] been specifically told by the school and the police" not to do so. Opening Brief 29. The Court agrees.

Plaintiff's complaint puts forward no factual allegations explaining the contours of Plaintiff's First Amendment claim. What is put forward appears to be entirely coextensive with the Fourth Amendment Claim. *See* Compl. ¶ 77 ("Plaintiff's First Amendment right of free assembly was violated when he was arrested and removed from the Valley School."); *id*. ¶ 81 (same). As stated, Defendant argued that Plaintiff failed to articulate a First Amendment claim (enforceable under the Fourteenth Amendment through Section 1983). Plaintiff made no concrete response to this argument in his opposition brief. That constitutes waiver because an argument left undeveloped is waived. *See Conroy v. Leone*, 316 Fed. Appx. 140, 144 n.5 (3d Cir. Mar. 9, 2009) ("We find this undeveloped argument has been waived."); *Clay v. Holy Cross Hosp*., 253 F.3d 1000, 1002 n.1 (7th Cir. 2001) (holding that

perfunctory and undeveloped arguments, and arguments unsupported by pertinent authority, are waived); *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs.").

However, Plaintiff does offer some argument in support of his *state*-based freedom of assembly claim. The Court assumes the argument here also applies to his *federal* freedom of assembly claim. *See State v. Schmid*, 423 A.2d 615, 628 (N.J. 1980) ("It is also clear that while state constitutions may be distinct repositories of fundamental rights independent of the federal Constitution, there nonetheless exist meaningful parallels between the federal Constitution and state constitutions, especially in the areas where constitutional values are shared, such as speech and *assembly*. Indicative of such mutuality, our State Constitution ... affirmatively guarantees to individuals the rights of speech and *assembly* ...." (emphasis added)).

Plaintiff states that he "had come to the school to maintain (correctly) that he had a right to pick up his son, which is clearly an attempt to *redress his grievances*. As testified at length by Mr. Deamer, he was not raising his voice ... but was merely being insistent upon his rights. Nonetheless, Deamer (upon advice of Mr. Wubbenhorst) told Mr. Tsitsoulis he could not come to the school, and ultimately Mr. Tsitsoulis was arrested when he came back. These actions deprived Mr. Tsitsoulis of his right to *free assembly* and to *redress his grievances*." Opposition Brief 22-23. This section of Plaintiff's brief comes absent *any* citation to the record; moreover, as Defendant argues it fails to articulate a claim. Why?

When a police officer effectuates an arrest absent probable cause, a plaintiff's Fourth Amendment right have been violated and may be vindicated under Section 1983. If the arrest also interfered with some expressive or political activity, then a Plaintiff may have a distinct First Amendment claim. *See, e.g.*, Liberty & Prosperity 1776, Civil Action No. 08-2642, 2009 WL 537049, at *11; *Brennan*, 780 A.2d at 592. The two constitutional claims are distinct: not every Fourth Amendment claim triggers a coordinate First Amendment claim. The fact that the arrested party might have been on public property at the time of a wrongful arrest (i.e., an arrest absent probable cause), the fact that he may have been meeting someone or someone may have observed him at the time of the arrest, does not automatically transform a Fourth Amendment claim into a First Amendment claim. It takes more to make a First Amendment claim than merely being arrested on space that may be a public forum. The First Amendment protects the "right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I. "Historically, the right of petition is the primary right, [and] the right peaceably to assemble [is] a subordinate and instrumental right, as if the First Amendment read: 'the right of the people peaceably to assemble' in order to 'petition the government.'" The Constitution of the United States of America: Analysis and Interpretation, S. Doc. No. 108-17, at 1267 (2002); *see also* United States v. Cruikshank, 92 U.S. 542, 552 (1876) (same). In either event, whether Plaintiff's claim is characterized under the right to petition or the right to redress grievances, Plaintiff has failed to explain what government entity (e.g., the courts, the School Board, the police)

he was attempting to influence at the time he was arrested. To the extent his claim is characterized as an assembly right, Plaintiff has failed to explain who the participants in the assembly were and what persons (if any) were its target audience apart from the government.

Albeit, "[l]ater cases [after *Cruikshank*, *supra*] tend to merge the rights of assembly and petition into the speech and press clauses, and, indeed, all four rights may well be considered as elements of an inclusive right to freedom of expression. Certain conduct may call forth a denomination of petition or assembly, but there seems little question that no substantive issue turns upon whether one may be said to be engaged in speech or assembly or petition." S. Doc. No. 108-17, at 1270-71 (footnotes omitted); *see also, e.g.*, *De Jonge v. Oregon*, 299 U.S. 353, 364-365 (1937); *Herndon v. Lowry*, 301 U.S. 242 (1937). To the extent Plaintiff's claim is characterized as a free expression claim, Plaintiff has failed to articulate what he was attempting to communicate, to whom, and for what purposes. Indeed, the one case cited by Plaintiff in support of his claim, *State v. Besson*, 266 A.2d 175 (N.J. Super. Ct. Law Div. 1970), involved "conducting a vigil in the school parking lot, [and] protesting what had happened the day before." Opposition Brief 23. Plaintiff's allegation is that he went to the school to pick up his son in order to comply with the FMC. There is no indication that his actions involved any expressive activity protected by the First Amendment. It follows that Plaintiff has failed to articulate a claim under the First Amendment.

**D.    The State Law Claims**

The Court declines to exercise supplemental jurisdiction absent a viable federal cause of action. *See* 28 U.S.C. § 1367; *Tarus v. Borough of Pine Hill*, Civil Action No. 1:01-4468, at *25-25 (declining to exercise supplemental jurisdiction over state law claims after dismissing federal claims providing the basis for original jurisdiction), *aff'd*, 105 Fed. Appx. at 361 (same).

## V.    CONCLUSION

For the reasons elaborated above, the Court **GRANTS** the Motion.

This terminates this action.

An appropriate Order accompanies this memorandum opinion.

s/ William J. Martini
**William J. Martini, U.S.D.J.**

DATE: December 23, 2009